

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

ROBERT W SWEITZER,

Debtor.

Case No.    LA 04-18590 TA

Chapter    7

**MEMORANDUM OPINION RE DEBTOR'S MOTION TO AVOID LIEN**

This case requires a determination of the meaning of "gross annual income" as used in California's statute regarding homesteads for debtors over 55 years of age.

Debtor filed a motion under 11 U.S.C. 522(f)(1) to avoid the judicial lien of Liner, Yankelevitz, Sunshine & Regenstreif, LLP ("Liner"). Liner timely filed an opposition and request for a hearing on the motion. Debtor in his motion alleges that Liner's lien impairs his homestead exemption, which Debtor claims is $150,000 pursuant to California Code of Civil Procedure § 704.730(a)(3)(C), which provides:

"(a) The amount of the homestead exemption is one of the following:...(3) One hundred fifty thousand dollars ($150,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:...(C) A person 55 years of age or older with a gross annual income of not more than

fifteen thousand dollars ($15,000) or, if the judgment debtor is married, a gross annual income, including the gross annual income of the judgment debtor's spouse, of not more than twenty thousand dollars ($20,000) and the sale is an involuntary sale."

Liner argues that Debtor is only eligible for a $75,000 exemption because he does not meet the income limitation in Code of Civil Procedure § 704.730(a)(3)(C) for the $150,000 exemption, and therefore Liner's lien does not impair Debtor's homestead exemption. The Court agrees with Liner, and for the reasons discussed below, Debtor's motion is denied.

Debtor listed the real property commonly known as 420 Middlebury Court, Claremont, California (the "Property") on his Schedule A at a value of $350,000, and claimed an exemption of $150,000 therein under Code of Civil Procedure § 704.730(a)(3)(c) on his Schedule C. In his schedules and motion, Debtor asserts that a senior lien of $194,763.09 encumbered the Property, with the Liner lien, in the amount of $92,157.36, in second position. No timely objection to the exemption was filed. The net proceeds of the post-petition sale of the Property in the sum of $84,628 were deposited with the Bankruptcy Court by stipulated order entered May 16, 2005, with the rights of the parties to the proceeds to await determination by the Court on Debtor's motion. It appears from the record that the amount deposited into the Court is net of the undisputed amount of homestead, i.e. $75,000, and that the first lienholder does not continue to claim any part of the proceeds. There is a reference to an arithmetic disagreement between Debtor and Liner about the amount of the first lien. The Court assumes that the first lien has already been paid in full, but if there remains any claim of the first lienholder, the parties will do the arithmetic regarding dividing the remaining proceeds after satisfaction of the first mortgage and payment of the undisputed portion of the exemption ($75,000) in accordance with this decision.

The main issue is whether Debtor is entitled to a homestead exemption in the amount of only $75,000, or in the amount of $150,000. Liner argues that the highest possible exemption amount in any case would be $125,000 as this was the highest amount allowed under Code of Civil Procedure § 704.730 in December 2001, the date of levy of the writ of attachment to which Liner's judgment lien then relates back under state law. Code of Civil Procedure § 704.965. Since the statute was not amended to increase the exemption until 2003, the claim to a $150,000 exemption is wrong under any

analysis. Debtor does not refute this argument.

In order to determine the amount of Debtor's homestead exemption, this Court must determine whether Debtor is entitled to offset his share of losses of the S corporation, Enterprise Ventures, Inc., reported as $35,775 in his 2004 tax return. If Debtor is entitled to offset his share of these losses in determining "gross annual income" under Code of Civil Procedure § 704.730 then Debtor had no "gross annual income" but only a net loss for 2004 and, presumably, would qualify for the enhanced exemption. This Court, however, believes Debtor should not be entitled to offset his share of the S corporation losses, and only the lesser exemption of $75,000 is appropriate in this case.

Although no objection to Debtor's claimed exemption was received, this Court must still consider the exemption claim on its legal merits. Although exemptions are determined as claimed by the debtor absent timely objection, even if the exemption is not otherwise supported in law (see *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644 (1992)), the Ninth Circuit Bankruptcy Appellate Panel has determined that this does not govern a lien holder's ability to defend in a lien avoidance action, such as the case at bar. *Morgan v. Federal Deposit Insurance Corp. (In re Morgan)*, 149 B.R. 147, 152 (9th Cir. BAP 1993).

Debtor argues that he qualifies for the larger exemption found at Code of Civil Procedure § 704.730(a)(3)(c) because, as of the date of the petition, he was over 55 and he and his spouse had a "gross annual income" of less than $20,000. Debtor's declaration, which was filed with the motion, provides: "On the filing date, I was married and over the age of fifty-five (55) years. In the calendar year 2004 up to the filing date, the gross income for both my spouse and I was less than $20,000..." However, from Liner's opposition and Debtor's own 2004 tax returns, it appears that wages paid in 2004 alone were at least $30,008. A twelve month period is clearly the appropriate measure for determining a Code of Civil Procedure § 704.730(a)(3)(c) exemption, and Debtor cannot rely on the happenstance of a filing early in the calendar year to enhance his exemption. *In re Goldman*, 70 F.3d 1028, 1029 (9th Cir. 1995). The parties seem to assume that 2004 is the appropriate twelve month period, even though most of this period was post-petition. Since the evidence submitted by Liner and extrapolation from Schedule I income suggest that the income earned in earlier periods was probably even higher, which twelve month period is used is not material to the outcome of this motion. Since

the parties focused on 2004, so will the Court.

Unfortunately, there is very little authority interpreting "gross annual income" as that term is used in Code of Civil Procedure § 704.730. Debtor cites to *Shelly v. Kendall (In re Shelly)*, 184 B.R. 356, 358 (9th Cir. BAP 1995) *affd.* 109 F.3d 639 (9th Cir. 1997). The debtors in *Shelly* owned a retail store. The chapter 7 trustee brought a motion to limit the debtors homestead exemption because he claimed their "gross income" based on gross receipts exceeded $20,000. *Id.* at 357. The court held that the debtors' gross income would be the income from their sole proprietorship reduced by the expenses of that company. The court reasoned that when a person owns a business, gross receipts are not the correct measure of income. The court felt that to hold otherwise would discriminate against sole proprietors. *Id.* at 360. However, *Shelly* is distinguishable and its holding does not compel a decision in favor of Debtor on these facts. Debtor seems to argue that *Shelley* stands for the proposition that "gross annual income" is the functional equivalent of "adjusted gross income" as used for computing taxes, i.e., wages, salaries, etc. or other income *less* the variety of possible deductions appearing at lines 12-21 of the IRS 1040 form, including NOL carryover, and losses on partnerships and S corporations. This argument is a vast overreading of *Shelley*. Indeed, the Shelley court held that "gross income" was a malleable concept and "should not convey the same definite and inflexible significance under all circumstances and wherever used. It is a term whose construction and meaning depends on the context of the subject matter." (citations omitted) *Id.* at 359. *See also, In re Kaura*, 211 F.3d 1273 (9th Cir. 2000); *In re Faber*, 78 B.R. 934, 935 (Bankr. S.D. Iowa 1987).

In *Shelly*, it made perfect sense that "gross annual income" should mean gross receipts *less* costs of goods sold because the debtors operated a retail merchandising establishment conducted as a sole proprietorship. Certainly in such a context, gross receipts are not meaningful in determining "income" unless cost of goods sold is first deducted. The debtor who spends more in a year to acquire the inventory than he realizes on sale has no "income." But, the court notes that in other contexts "gross income" has been defined very differently, such as in a service business other than mining, manufacturing and merchandising, where gross income equals gross receipts. *See, e.g. Guy F. Atkinson Co. Of California and Subsidiaries v. Commissioner of Internal Revenue*, 82 T.C. 275, 298 (1984), citing *Hahn v. Commissioner*, 30 T.C. 195 (1958) affd. 271 F.2d 739 (5th Cir. 1959).

Moreover, in the *Hahn* case, where the taxpayer was engaged in operating a blacksmith and welding shop, "gross income" was determined on a gross receipts basis, without deduction of cost of goods sold, because the taxpayer was "*primarily* engaged in repairing, plows, trailers..." *Hahn, supra* at 196-197 (emphasis added). Similarly, In *In re Faber, supra*, the debtor was not permitted to deduct "costs of operation" in the trucking segment of his business to reduce his gross non-farming income to less than half of his annual income so as to qualify as a "family farmer" under Chapter 12. The *Faber* court held the trucking income was primarily from the rendering of services and, therefore, deduction of the expenses from gross receipts was improper in determining "gross income" under what is now 11 U.S.C. § 101(18)(A). Therefore, it is appropriate to determine the *primary* source of Debtor's income, and, if it was from rendering of services, deductions from gross receipts should not be allowed.

The parties do not provide the Court with any evidence explaining what was the business of the S Corporation, Enterprise Ventures, Inc. or whether Debtor's share of its 2004 losses comprised a majority or minority of Debtor's gainful efforts on a time-spent basis for that year, although the Court notes from the California 2004 return that Debtor was only a 15% owner of the stock. There is very little evidence in the record, but what appears (such as W-2 forms) persuades the Court that Debtor's gross annual income was primarily from services he rendered to Pepperdine University and Claremont College as a consultant or professor.

Although there is little guidance from California case law or legislative history citing Code of Civil Procedure § 704.730, there are other sources which may provide guidance and which persuade the Court that deduction of costs should not diminish gross receipts in determining "gross annual income" in our context. For example, California Family Code Section 4058, governing child support obligations, defines "annual gross income" in a variety of ways but makes a distinction between income based on commissions, salaries and royalties under subsection (a)(1) from "income from the proprietorship of a business, such as gross receipts from the business reduced by expenditures required for the operation of the business..." under subsection (a)(2). Moreover, the statute has been interpreted to exclude unrealized appreciation of assets such as equity in a parent's residence, in the definition of "annual gross income." See e.g. *In re Marriage of Henry*, 126 CA. 4th 111, 119 (2005). Clearly, "annual gross income" is not diminished by all possible deductions against the gross amount of wages

and salary, but only certain specified deductions depending on the nature of the income.

The Court is further persuaded that it is improper to allow a debtor, whose income from wages and consulting services alone exceeds the $20,000 threshold, to come back below the threshold by offsetting investment losses, such as Debtor seeks to do by downstreaming the losses from the 15% ownership in an S Corporation. This may be appropriate in determining "adjusted gross income" *for tax purposes* (26 U.S.C.S. § 62 defines adjusted gross income), but not in meeting "gross annual income" for Code of Civil Procedure § 704.730 purposes. Moreover, the Court's approach seems more logical on policy grounds. The Court believes the purposes of the "gross annual income" calculation are very different in the case of determining an exemption than when determining annual taxes. Exemptions tend to be singular events, and the California legislature was clearly intending in Code of Civil Procedure § 704.730(a)(3)(C) to preserve a minimum homestead refuge for persons of modest means and advancing age, who are decreasingly likely to be able to regain a financial foothold after financial calamity has struck. *See*, CA B. An., A.B. 451 Assem., 6/03/1997; CA B. An., S.B. 804 Assem., 6/10/2003. Annual taxes, in contrast, can ebb and flow from year to year. For example, the Court notes that Debtor has substantial carry forward net operating losses (NOL) shown on his tax returns which may shield income from taxes for years to come. This may be appropriate to reduce the contribution to federal and state income taxes in any given year. It does not follow that this should also permit an enlarged homestead at the expense of creditors. Therefore, the Court believes it is correct to apply the more flexible definition to "gross annual income" which would **not** allow deduction from gross receipts where the debtor's receipts are primarily from services rendered, but only in more capital intensive enterprises such as retail sales, as was the case in *Shelly*.

Consequently, Liner's lien should only be avoided insofar as it impairs a $75,000 exemption, not a $150,000 one. Since the $75,000 has already been paid to Debtor, the $84,628 balance remains subject to Liner's lien and is not further subject to avoidance under 11 U.S.C. § 522(f)(1).

DATED: *Oct. 13, 2005*

HONORABLE THEODOR C. ALBERT
United States Bankruptcy Judge

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

You are hereby notified that a judgment or order entitled: MEMORANDUM O RE DEBTOR'S MOTION TO AVOID LIEN was entered on 10-13-05.

I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on 10-13-05.

David A. Tilem
Brian D. Wirsching
Law Offices of David A. Tilem
500 North Brand Blvd., Suite 460
Glendale, California 91203

Leslie A. Cohen
Enid M. Colson
Liner Yankelevitz Sunshine & Regenstreif LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024

David A. Gill
Chapter 7 Trustee
2029 Century Park East, Third Floor
Los Angeles, California 90067

DATED 10-13-05

By _____
Clerk